That brings us to the final case on the calendar. That's Moses v. Isaacson. All right. So, Mr. Isaacson, you've reserved three minutes for rebuttal. Yes, Your Honor. You have seven minutes to begin. You may start. Thank you, Your Honor. May I introduce the court? I'm Eric Allen Isaacson. I am a member of the class in this case, which is before this court for the second time. The first time they entered a coupon settlement that got vacated and sent back to the district court. The coupons were coupons that class members weren't likely to be able to use. And CAFA says that if you've got a coupon settlement, you get paid on the basis of the percentage of the coupons that are redeemed. That wasn't acceptable to class counsel, so they voided the award on or voided the settlement on remand and entered another one, which is, I think, much better. This one recovers more cash and it pays less in attorney's fees. Nonetheless, if you divide the class recovery by the number of class members, it's less than $3 per class member, which, quite frankly, is not enough to compensate class members for the time it takes to read the class notice and settlement agreement. Now, I've got several arguments because I, as an appellate lawyer, try to focus on particular questions of law. First goes to standing for injunctive relief. The complaint was filed in this action. Why does that matter anymore? There is no injunctive relief. Well, the settlement agreement this time refers to settlement relief under a subheading. First, or under a heading, heading two, first subheading is payment of, payment to the settlement class members. And the second is practice changes, which it says have already been implemented. They were implemented in the first settlement agreement, which you all vacated, and for which the name plaintiff did not have Article III standing. And the court So you want that vacated? Well, the court You want the times to go back to the old practice? No, I don't. I don't think that I just don't understand what the problem is with the question of whether today the Ms. Moses or anybody else has standing to seek injunctive relief when that's all in the past. There's no need for any injunction. Well, the problem is that the district court, in deciding to approve this settlement, says that settlement agreement section 2.2, that's the part that has what I think is perspective changes, has added significant value to the settlement agreement. Well, maybe it has and maybe it hasn't. What relief do you want on behalf of yourself personally or of the class that has to do with this alleged injunctive relief? My problem, Your Honor, personally, is with class actions that are filed to benefit class action lawyers rather than class members. Yeah, so I mean, really, I mean, you are acting in the capacity, insofar as that's your issue, of people without standing who just don't like the way the law is being administered. I'm asking, what is it that you would like us to do that would benefit you or that would benefit the class of which you are a part that has anything to do with injunctive relief? What benefits me is, I think, seeing that class action settlements are not approved if they are not actually benefiting the class in a significant way, and that the rules are applied. It's very important to me that the rules be applied. Well, it's very important to me that various environmental laws get applied, but if I don't personally have some stake in it, I don't get to come to court and ask the EPA being joined to do this, that, or the other thing that I think would be more in compliance with the law. That's a class-extending problem. I'm just trying to understand what it is that you are asking us to do that turns on whether Ms. Moses had standing at the beginning, because at the beginning she had standing, right, to get things changed if you wanted them changed? No, not for injunctive relief, because she had canceled her subscription. She no longer. She, in May of 2020, made her last payment for her subscription. She had zero interest in prospective relief at that point. At that point — And then there was a settlement that gave injunctive relief that you think — For which there was no Article III standing. But now there is no longer an issue about that in the case. Well, there's the issue — The New York Times changed its policies. If you're saying it didn't agree to be bound by the change, then it's not something that can be taken into account to approve the settlement as a benefit to the class or for paying the lawyers. I think that you've got the further problem that Rahel Smith articulated, saying, I knew I was going to get a subscription that renewed. I wanted a subscription that renewed. I've got to tell you, I thought the case was about the jump from $4 a month to $17 a month that I didn't recall being informed about. But it turns out on remand, when they're, you know, discussing this in an approval hearing, they're talking about the initial renewal for the first month as being actionable. And they present it as the best case damages at one point, although they also contend that if they went to trial, they'd be asking for 12 months. And at other points, they say for lots of years, which means they haven't laid out the requirements for Grinnell factors. But if Rahel Smith is the typical class member, and she may well be, then there's no Article III standing for most of the class. She's the person who objected. She's the other person who objected. And she's not here appealing. No. Nobody else made, in the class, made these objections. I'm not sure why we are assuming that she is the typical representative. She's someone who did something that no one else apparently did. Article III standing is an issue typically that a court is obligated to raise to respond to, even if nobody else raises it. And I think that I, in prosecuting an appeal, am obligated to bring Article III standing points, jurisdictional, subject matter jurisdiction points to the attention of the court in connection with my appeal. I guess I'm confused because it seems to me that the cause of action that would be brought here is under California law. And California law basically says that folks like the New York Times can't build in an automatic renewal provision. And if they do, the consequences are that the services they provided or the subscriptions they provided are gifts. It doesn't require you to want to renew or care about renewing or doesn't really inquire whether you would have renewed anyway. Article III in federal court requires an injury, requires a concrete injury. The injury here is that you violated a California law that entitles you to get notice. Just like a wage and hour law entitles you to get minimum wage. I might be willing to work for less than minimum wage, but that wouldn't mean I don't have standing.  For minimum wage, that probably makes sense. Well, what is the difference? I guess this puts me in an exactly analogous situation. It doesn't seem to me that a person who says, yeah, I knew they were going to do this, but still I didn't get notice and that's a violation of California law and I'm entitled to bring an action and get this as a gift or, you know, basically take my shot. Your Honor, I think it's a case where they're bringing actions against newspapers like the Washington Post and the New York Times to shake them down to get attorney's fees and that it is not designed to benefit the class. Now, I, class members. Now, I have the framing. Sure, that may be, but I thought you were suggesting that most of this class is not even harmed. Well, that appears to be the case. So, it's sort of an odd thing for you then to be objecting to the settlement when what you're saying is that most people are getting a windfall. Well, that is possible that most people are getting a windfall. In which case, it ought to be. That's a bad settlement other than for the New York Times, if that's right. In which case, the settlement proceeds to be focused, to be allocated on the people who were injured and who didn't get a windfall. But, again, the statute doesn't make a distinction between those who were oblivious about the subscription renewal and those who knew and would have renewed regardless. It doesn't make a distinction, right? I don't see a facial distinction in the statute. All right. Thank you. Okay, thank you. Well, now, who are we going to hear from first? Mr. DeCant? That's correct, Your Honor. Am I pronouncing your name right? DeCant, Your Honor. DeCant. You're representing Ms. Moses. That's correct. Good morning, Your Honors. Today, I'd like to cover, in order, injunctive relief, the Grinnell factors, attorney's fees, and the incentive award. That's quite a lot of material. I'll be fast. Yeah, you've got three minutes, DeCant. First, in brief, I want to respond to an issue that Mr. Isaacson raised. He stated that the relief per class member is $2.71. That's actually assuming a 100 percent claims rate. Now, notice in this case reached 95.6, I believe, of subscribers through direct notice, and we had a claims rate of 7.4 percent. Proceeds shall be distributed pro rata, and as the Court discussed at the final approval hearing, given the claims rate of about 7.4 percent, claimants will get approximately $20. I'm pleased to report that Mr. Isaacson is actually a claimant. I'm glad he is. What does it mean that the fund is non-reversionary? It means that the proceeds Isn't what you just said that a small percentage of people make claims, all the money will be distributed to them? Yes, Your Honor. We collected claims. There's about 64,000 claimants, 7.4 percent, and the money shall be distributed pro rata to those claimants, and it comes out to about $20. None of it will go back to the Times. That is correct, Your Honor. Yes. And looking at the damages in this case, which dovetails into the Grinnell factors 8 and 9, the first 12 months of the New York Times subscription is $4. After 12 months, I believe it raised to $17 or that approximate amount, but $4 per month is a good proxy based on my current understanding of the law and likely be able to recover $4 per class member, i.e., the first month of their subscription. So the settlement more than makes people whole. Claimants get paid $20. Well, the claimants do. It does seem a bit to the kind of argument that Mr. Isaacson would make, at least as a matter of public policy, that if you have a class action on behalf of all of those people, and something like 93 percent of them don't even think it's worth sending in a piece of paper and asking for the money back, that that's great, because then the 7 percent who pay attention to their mail and put in a claim get overcompensated and nobody else gives a damn about the whole purpose. And for that, the lawyer is going to get a substantial amount of money. Well, this is a bog-standard, all-cash, common fund, non-reversionary settlement. Mr. Isaacson essentially is attempting to do is completely upend well-established class action. Yeah, I mean, that's basically a complaint about the way that the class action system operates and whether that's a good thing or a bad thing for consumers or is just a good thing for lawyers, and that's got not much to do with the legal issues. Yes. And I appreciate the Court's concern, but the Federal Judiciary Center, the FJC, wrote a report, and this is in our briefing, on successful claims rates and class action settlements, and they find somewhere between a 2 percent to 7 percent claims rate to be successful.  So we have 7.4 percent here. In my last 30 seconds, I just want to briefly note an issue about Article III standing. Article III standing will be largely held, largely argued by Ms. Rodriguez here. But in the closing moments of Mr. Isaacson's argument, you got it exactly right. This case concerns the unconditional gift provision of the automatic renewal law. That's Cal Business and Professional Code 17603. Also, under the California Unfair Competition Law, the UCL, illegal acts, plaintiffs in California can bring actions for illegal acts that entitle them to rescission or reversion. So this is essentially a UCL claim and an unjust enrichment claim and a conversion claim, really porting over the unconditional gift provision of the ARL. And those two provisions dovetail perfectly. Every class member was exposed to the same omissions. It's the same checkout page. They're not custom-tailored checkout pages. And for a clear black-letter California law in the ARL, if you don't comply with certain disclosure requirements, it's an unconditional gift. That's why our class definition does not have a CNTR requirement. We don't need state of knowledge. We don't need to do mini-trials. We don't need to survey class members. Anyway, I'm over time. I thank the Court. All right. Thank you very much, Mr. Deckert. We'll now hear from Ms. Rodriguez. And you're representing the Times. Is that right? Yes, Your Honor. Good morning. Kristin Rodriguez on behalf of the New York Times. Mr. Isaacson's second attempt to upend this long-pending California automatic renewal case should be rejected. As Mr. Isaacson recounted, this case comes before the Court nearly three years after Mr. Isaacson's prior appeal. And following this Court's decision, the parties spent significant time and resources to work on a settlement that was fair, adequate, and reasonable. And the result is a settlement that is an all-cash, very straightforward, probably as straightforward as they come, class settlement that we ask this Court to affirm. So was it relevant at all then for Judge Abrams to even mention the fact that the Times had agreed not to, basically, they agreed not to grant the injunctive relief that had been part of the other settlement? I think that Judge Abrams' comments need to be read in context of what was stated during the final approval hearing. I think my best understanding of what... Well, is it relevant to the Grinnell factors for what is an all-cash deal? No, Your Honor. No, it's not. Because injunctive relief was not part of this settlement. Well, is it an extra non-cash sweetener to an otherwise cash deal? Potentially, as it goes to attorney's fees, to which the Times takes no position on. But overall, it's not. Right now, it can only be viewed as an all-cash settlement. The settlement was only viewed under a money damages certification lens. Well, under this settlement, could the Times go back to its prior practices? At its own peril, yes. At its own peril in terms of perhaps it has recognized that doing it the way they used to do it violates California law, but they would not be in contempt of any order that is or what you're telling me is they are not in contempt of any order of the district court that is issued in connection with this settlement. That's correct, Your Honor. And although the Times still continues to disagree that its prior practices were in violation of the California ARL, there would not be a violation of the court order should it somehow go back to changes.  If you decided that it was worth your while to go back to the prior practice and then fight the next class-action lawyer who came along seeking things, you could do that.  Yes, Your Honor. Yes, Your Honor. Focusing on the Article III standing issue as to monetary damages that Mr. Isaacson has pointed us to, I would submit to you, Your Honors, that Ms. Moses' standing, which is undisputed, was sufficient for this court to – for the district court to issue its ruling. We wouldn't even have to decide that, would we? I mean, it seems to me that everybody is standing just by virtue of the fact that they had a subscription that was automatically renewed in violation of California law. That's absolutely correct, Your Honor, based on what Plaintiff's theory was at the time of her filing of the complaint. The same reason that she has standing is the reason why everybody else in the class that she represents has standing. At the settlement stage, yes, Your Honor. Absolutely. Mr. Isaacson has controverted that, but it's clear under this Court's precedence and under the Supreme Court's precedence that her standing was enough to confer standing on the class for settlements purposes. But, I mean, if they're going to file a claim, they have to provide some evidence that they did the same thing that Ms. Moses did. Well, it – That is to say, they would have to say, I had a subscription and it was automatically renewed. Yes, Your Honor. And that's exactly what was required here, that they had to make a certification of subscription and renewal fees, and that was done here. So absolutely. So there's really no question here about Article III standing, and that is absolutely consistent with this Court's prior holdings in Highland. It's consistent with this Court's Judge Jacobs ruling in Denny. And it should be ruled here that, again, Ms. Moses' standing was indeed sufficient. And for those reasons and those reasons that we join with Mr. Deckett, we ask that District's Court's approval, unless there are any further questions, I will conclude. Thank you, Your Honor. All right. Thank you very much. And, Mr. Isaacson, you have three minutes for rebuttal. Thank you, Your Honor. I just want to point out that the Supreme Court in TransUnion v. Ramirez rejected the notion that the fact that the class representative in certified class action that his standing was sufficient with respect to establishing standing of the entire class in that case. There's actually a couple of classes in that case. The Supreme Court held that every class member, in the Supreme Court's words, I quote, every class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. But the injury here, again, is the violation of a California statute that requires notice before renewal. It doesn't have a reliance argument. There's no requirement of that, right? It does not have a reliance requirement. So every member of this class, presumably that they had a subscription and the subscription was renewed, has Article III standing, right? I will not agree that every member of the class has Article III standing because I think that members of the class very likely understood that they were having their subscription renewed and didn't object. But we're upset to say that you don't have a claim under 17603 because you would have agreed to renew anyway. Well, I mean, the theory that it's only one month damage is that people who got their subscription renewed realize they've got a renewal and they keep on paying. It means that they, you know, wanted to have the subscription renewal. So it's only the first month that they say is an issue. Well, I think that that also indicates that the first month is not really something where people have been injured for the vast majority of the class. Well, so you don't think you were injured? Well, if the claim is that I was injured because my subscription renewed at $4 a month, then I don't think I was injured. That's not the claim. The claim is that you were injured because, under California law, your subscription was renewed without you getting notice, whether you needed it or not. Well, I didn't need it, that's for sure. All right. Thank you, Your Honor. I'm just curious, Mr. Isaacson. It seems to me that in the last appeal, your intervention resulted in a substantial improvement in the settlement. That has no bearing on these issues that you're raising. But it seems to me you would be entitled to attorney's fees for that intervention. Did you apply for that? And have you forgone that because you haven't done it yet? I've forgone it for two reasons. One reason is that there's plenty of case law that says that if somebody is acting pro se, they can't apply for attorney's fees. I see. Now, I think that that's primarily in fee-shifting cases. It seems to me that if I were to go in and ask for fees, I would be told, you were representing yourself and here's a bunch of cases under the fee-shifting area that say you don't get paid. So if you had managed to get together with Ms. Smith and had represented her, you would have been entitled to attorney's fees. I suppose, if I managed to get together with Ms. Smith. Well, I will say that whether you are entitled or not entitled and whether you applied or didn't apply, that it certainly is the case that your previous intervention did result in a substantial improvement of the settlement for the class and the class members owe you their thanks for that. Thank you very much, Your Honor. All right. Thank you all. We will reserve decision. That concludes the arguments on the argument calendar. And so with that, I will ask that the deputy adjourn.